BYE, Circuit Judge,
concurring in part and dissenting in part.
I agree the district court did not commit a procedural error in calculating Mosley’s advisory guideline range. I disagree, however, with the majority’s conclusion the *592 district court did not abuse its discretion in imposing a special condition of supervised release prohibiting Mosley from using any alcohol and from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol. Therefore, I respectfully dissent.
We recently observed our cases reviewing special conditions of supervised release imposing complete bans on alcohol “have yielded mix results.” United States v. Simons, 614 F.3d 475, 480 (8th Cir.2010). “In general, we have upheld such bans for defendants with substance-abuse problems.” Id. We have reversed such bans, however, for defendants whose “history or crime of conviction did not support a complete ban on alcohol.” Id. The record here indicates alcohol did not play a role in Mosley’s crime of conviction. The district court acknowledged as much by stating it had no information “alcohol played any role in [Mosley’s] offense.” Sentencing Tr. at 27. The question thus becomes whether Mosley’s history justifies the district court’s prohibition against the use of alcohol and the entering of bars or taverns. I cannot say it does.
The majority first asserts Mosley’s “documented history of abusing alcohol” weighs in favor of upholding the district court’s total ban on alcohol. See ante, at p. 591. The record, however, shows otherwise. The record contains exactly two references to alcohol, neither of which amounts to a history of alcohol abuse. The record shows Mosley described herself as a “social drinker for special occasions only” and stated she first consumed alcohol at age twenty five. PSR, at ¶ 49. Surely, the majority is not equating “social drinking” with “a documented history of abusing alcohol.” Thus, the only other reference that could possibly support the majority’s statement is Mosley’s 1998 conviction for driving while intoxicated.[2] But a thirteen-year-old, isolated conviction, which did not even count toward the computation of Mosley’s criminal history points, hardly amounts to a “history of abusing alcohol,” and in the absence of any other evidence indicating a pattern of alcohol abuse, the record does not support the district court’s finding Mosley has an “alcoholic past.” Sentencing Tr. at 31.
In concluding the record justifies a total ban on alcohol, including a ban on entering bars or taverns, the majority also relies on Mosley’s history of substance abuse. And to be sure, Mosley admitted to using marijuana daily for ten years, from 1988 to 1998, and to using crack cocaine for eight months in 1990. Mosley’s last reported use of marijuana, however, was over a decade ago and her last use of crack cocaine was over twenty years before the sentencing hearing in this case. Despite this temporal gap, the majority concludes the district court could reasonably prohibit Mosley from using alcohol and entering bars or taverns for the purpose of ensuring Mosley continues to be drug-free.
Citing to United States v. Behler, 187 F.3d 772 (8th Cir.1999), the majority states the district court was justified in imposing a total ban on alcohol, even though Mosley stopped using illegal substances over a decade ago. But as the majority itself notes, the evidence before the district court in Behler was different from the record evidence in this case. In Behler, the district court received a sentencing recommendation from the probation offi *593 cer, indicating the use of alcohol would limit the defendant’s ability “to maintain a drug-free lifestyle.” Id. at 779. Moreover, the probation officer’s recommendation was based on data from the National Institute on Drug Abuse, explaining “the use of any intoxicants, including alcohol, limits a recovering person’s ability to maintain a drug-free lifestyle.” Id. The record further established “any use of alcohol is inconsistent with the treatment philosophy of most substance abuse recovery programs nationwide.” Id. Based on the evidence before the district court, we upheld the total ban on alcohol, noting the district court had before it “the necessary foundation for determining that any alcohol use would hinder the defendant’s rehabilitation process.” Id.
No such foundation is present here. Rather, the district court’s decision to impose a total ban on alcohol is “based on nothing more than an assumption.” Compare id. (upholding a total ban on alcohol where the evidence before the district court established the defendant was drug dependent), with United States v. Bass, 121 F.3d 1218, 1223-24 (8th Cir.1997) (reversing a total ban on alcohol where there was no evidence the defendant was drug dependent and the district court “simply assume[d] that [the defendant] would as a matter of course replace alcohol for marijuana”). As articulated by the district court at sentencing, the court’s decision to impose the total ban on alcohol was based on the following:
Well, [Mosley] has a drug and alcohol past, with the use of a number of illegal substances. There is a cross-addiction, and so I’m going to stick by those special assessments — or those special conditions of her supervised release. I think it would be well for her to obviously abide by those unless overturned at the Circuit. Or if she feels like when she comes out of prison that she’s got things under control, she can always talk to her probation officer and see if those can be modified or ask for modification. She also has had mental health issues, and I think that she should carefully consider whether or not to challenge those conditions. I think she would do much better on supervision if she has those additional resources available given her history.
Sentencing Tr. at 31.
The explanation given by the district court is precisely the type of pure speculation we must not tolerate. The record before the court contained no evidence establishing the possible effect of alcohol on a person who — it bears repeating — had maintained a drug-free lifestyle for years. The record contained no evidence linking alcohol to Mosley’s specific mental health issues. Yet, despite the lack of such evidence, the majority concludes the district court could reasonably determine a total ban on alcohol was necessary.
Relying on our recent decision in United States v. Forde, 664 F.3d 1219 (8th Cir. 2012), the majority asserts it is within the sentencing court’s discretion “to recognize that ‘the use of alcohol limits a recovering person’s ability to maintain a drug-free lifestyle.’ ” Ante, at 591 (quoting Forde, 664 F.3d at 1224). Forde, however, is factually distinguishable. Unlike the record here, the record before the district court in Forde established the defendant was drug dependent. 664 F.3d at 1223. By his own admission, the Forde defendant used marijuana daily for thirteen years — up until the commission of the crime of conviction — and continued to abuse drugs even after participating in a drug treatment program. Id. It was within this context that we concluded the district court’s finding cross addiction posed a threat to the defendant’s rehabilitation was not pure speculation. Id. at 1224. But *594 unlike the defendant in Forde, Mosley last used marijuana over a decade ago and stopped using crack cocaine in 1990 — more than twenty years ago — after successfully completing an inpatient drug treatment program. In fact, the PSR indicates that following her release from the program, Mosley volunteered as a motivational, successful recovery speaker at the treatment center. And in the absence of any record evidence rendering Mosley drug dependent, I remain convinced the district court’s determination cross addiction posed a threat to Mosley’s rehabilitation was based on nothing more than an assumption.
I also cannot agree the district court’s reliance on Mosley’s history of mental health issues justifies the imposition of the special condition here. “Allowing for some use of ‘judicial common sense,’ ” the majority states, the district court could reasonably conclude the use of alcohol may interfere with Mosley’s rehabilitation following her release. Ante, at 591 (quoting Forde, 664 F.3d at 1224). Ironically, the majority then refers to Amitriptyline Concise Monograph, Physician’s Desk Reference, to explain the possible effect of alcohol on persons taking amitriptyline[3], one of Mosley’s prescribed medications. See ante, at 591-92. While such knowledge may well be within the realms of a physician’s common sense, I highly doubt it qualifies as “judicial common sense.” Again, the record contains no evidence linking alcohol to Mosley’s amitriptyline medication and the district court’s reliance on Mosley’s mental health as a basis for prohibiting her from using alcohol and entering bars or taverns is therefore pure speculation.
Finally, the majority omits the fact Mosley’s standard conditions of supervised release require her to “refrain from the excessive use of alcohol” and prohibit her from purchasing, possessing, or using any controlled substance. It seems to me these requirements are sufficient to alleviate any concerns the district court might have had about Mosley’s past use of illegal substances or her ability to maintain a drug-free lifestyle in the future. See, e.g., United States v. Walters, 643 F.3d 1077, 1080 n. 2 (8th Cir.2011) (“We note [the defendant] must still abide by all the standard conditions of supervised release, which includes a restriction on any ‘excessive use of alcohol.’ ”).
Based on the record, I would find the district court abused its discretion in imposing a special condition of supervised release prohibiting Mosley from using any alcohol and from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol. Therefore, I would vacate the condition and remand for resentencing.

. According to the PSR, Mosley’s vehicle was stopped on May 18, 1997 after Mosley failed to yield to law enforcement. ¶ 32. The complaint indicated she admitted to consuming alcohol and failed the administered field sobriety tests, but refused to submit to chemical testing. Id.

. While the PSR indicates Mosley has been prescribed anti-depressant medications since 2001, it does not list the specific medications. PSR, at ¶ 48. Rather, the PSR provides a general list of Mosley’s current prescriptions, including a prescription for 25 mg of Amitriptyline. Id. at ¶ 43. Nothing in the PSR indicates Amitriptyline is an anti-depressant.